IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JUSTIN FORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:21-cv-01217 (RDA/TCB) |
| ) | |
| GATES, HUDSON & ASSOCIATES, INC.,) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Gates, Hudson & Associates' ("Defendant") Motion to Dismiss ("Motion") Plaintiff Justin Ford's ("Plaintiff") Complaint. Dkt. 9. The Court dispenses with oral argument because it would not aid in the decisional process. Fed. R. Civ. P. 78; E.D. Va. Loc. Civ. R. 7(J). The Court considers the Motion together with Defendant's Memorandum in Support (Dkt. 10) and Plaintiff's Opposition (Dkt. 13). The Defendant's Reply (Dkt. 14) was filed after the deadline established by Rule 7(F)(1) of the Local Rules of the Eastern District of Virginia and was not considered in this deliberation. Even if Defendant's Reply was considered, it would not affect the Court's ruling. Based on the filings, the Court denies the Motion for the reasons that follow.

I. BACKGROUND

A. Factual Background

Plaintiff Justin Ford alleges that his employer, Defendant Gates, Hudson & Associates, has discriminated against him (Count I), refused to accommodate him (Count II), and retaliated against him (Count III) on the basis of his disability in violation of the Americans with Disabilities Act of 1990 ("ADA"). Dkt. 1 ¶¶ 44-69. Based upon the standard of review at this stage of the litigation,

this Court accepts all facts alleged in the Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Defendant employed Plaintiff as a Portfolio Accounting Manager from on or about April 22, 2019, until his termination on February 26, 2020. Dkt. 1 ¶¶ 6, 38. As an employee of Defendant, Plaintiff assisted in the transition of new properties, analyzed clients' accounts, helped conduct year-end audits, prepared owner distributions, and inspected financial statements. *Id.* ¶ 8. Plaintiff often worked over forty hours per week to complete his assigned tasks. *Id.*

On two occasions, Plaintiff allegedly received positive feedback from his supervisors. *Id.* ¶ 9. Around October of 2019, Defendant's Chief Financial Officer, Diane Kaplon, allegedly informed Plaintiff he "was performing well and meeting company expectations." *Id.* On another occasion in the fall of 2019, Ms. Kaplon and Aline Ngo, Plaintiff's immediate supervisor, recognized Plaintiff for his ability to obtain a difficult business license and his assistance of other employees who encountered similar problems with licensing. *Id.*

In January of 2019, Plaintiff received a diagnosis of viral meningitis and temporomandibular joint dysfunction ("TMJ"). *Id.* ¶ 10. As a result of his disease, Plaintiff experiences severe headaches, ear and throat pain, heightened sensitivity and pain to sounds, dizziness, and light headedness. *Id.* Plaintiff experienced symptoms throughout his employment with Defendant. *Id.* ¶¶ 6, 10, 38.

Upon his hiring in late April of 2019, Mr. Ford applied for disability insurance through Defendant's Human Resources Department. *Id.* ¶ 15. But Defendant failed to process Plaintiff's application. *Id.* In September of 2019, Plaintiff became aware that Defendant failed to file Plaintiff's April 2019 application and attempted to apply again. *Id.* ¶ 16. Because of Defendant's alleged failure to inform Plaintiff of additional documents required to complete the second

application in September of 2019, Plaintiff believed he completed and filed an application when he had not. *Id.* In early February of 2020, Plaintiff learned that Defendant again failed to submit his September 2019 disability benefits application and met with Defendant's Director of Human Resources, Paul Schwartz, to resolve the issue. *Id.* ¶ 17. In this meeting, Plaintiff allegedly received a third application and a promise for prompt submission of the application and an expedited process. *Id.* Plaintiff, however, avers he never received disability benefits because Defendant terminated his employment shortly after his meeting with Mr. Schwartz. *Id.*

### 1. Requests for Leave

On four separate occasions, Plaintiff allegedly requested leave from Defendant to attend to personal matters. *Id.* ¶¶ 20-26. In mid-September of 2019, Mr. Ford sought bereavement leave to mourn the death of his grandfather as allowed by Defendant's employee handbook. *Id.* ¶ 20. Donna Kung, a supervisor of Plaintiff, allegedly responded disapprovingly to Plaintiff's request by suggesting Plaintiff should have made the request sooner, commenting poorly on Mr. Ford's work performance without providing feedback for improvement when he asked, and telling Plaintiff to "enjoy [his] vacation" in reference to his bereavement leave. *Id.* ¶¶ 13, 20. After this interaction, Plaintiff met with Mr. Schwartz regarding Ms. Kung's handling of his bereavement leave. *Id.* ¶ 21. Mr. Schwartz allegedly apologized for Ms. Kung's behavior and deemed it inappropriate. *Id.* In late October of 2019, Ms. Kung called Plaintiff and his immediate supervisor into her office to inquire why Plaintiff met with management "behind [her] back" but allegedly did not inform Plaintiff of any problems with his work. *Id.* ¶ 22.

During early November of 2019, Plaintiff requested and was approved to use forty hours of personal time off ("PTO") at the end of December of 2019. *Id.* ¶ 23. Plaintiff used his PTO for two medical appointments regarding his disability. *Id.* Upon returning from his PTO, Plaintiff

requested time off for eight medical appointments from the middle of January of 2020 to the end of February of 2020. *Id.* ¶ 24. On February 20, 2020, exacerbated symptoms caused Plaintiff to seek immediate medical care at an urgent care facility. *Id.* ¶ 25. With these heightened symptoms, Plaintiff took medical leave until February 28, 2020, and submitted doctor's notes to provide an explanation for his absence. *Id.* While on medical leave and seeking treatment, Plaintiff regularly updated his supervisors regarding his work assignments. *Id.* ¶ 26.

2. Placement on Performance Improvement Plan ("PIP") and Termination

Beginning in December of 2019 and lasting until his termination, Plaintiff received assignments and tasks that allegedly could not be completed within the forty-hour workweek. *Id.* ¶ 27. Plaintiff allegedly informed Ms. Kung and another employee of his concerns and proposed that Ms. Kung hire additional staff to help manage the workload. *Id.* Ms. Kung informed Plaintiff and the fellow employee that they should work on the weekends to finish their assignments by the assigned deadlines. *Id.* Plaintiff heeded the request and continued to work in excess of forty hours per week to complete his tasks. *Id.*

In early January of 2020, Plaintiff apprised his peers and supervisors of his disease and ongoing treatments. *Id.* ¶ 28. Ms. Kung ostensibly appeared upset by Plaintiff's disclosure of his alleged disability and tersely told Plaintiff to get treatment. *Id.* On or about January 23, 2020, Plaintiff notified his supervisors that he continued to experience the adverse symptoms of his disease without improvement and requested, as accommodations, "restroom breaks and a lighter workload" as he was working approximately sixty hours per week. *Id.* ¶ 29. Ms. Kung responded to Plaintiff on January 29, 2020, that his requested accommodations upset her and denied the request. *Id.*

On February 4, 2020, Ms. Kung and an employee in Defendant's Human Resources team, Ms. Russell, convened a meeting with Plaintiff and placed him on a thirty-day PIP, scheduled to terminate on March 4, 2020, for allegedly not completing assignments by "established deadlines." *Id.* ¶ 32. The PIP relied on four instances in which Ms. Kung provided feedback and counseling to Plaintiff about his "unacceptable performance" on September 17, 2019, October 29, 2019, January 14, 2020, and January 23, 2020. *Id.* ¶ 33. Of these dates, none allegedly related to his work performance but included conversations about his bereavement leave and need for medical leave. *Id.* On this score, Plaintiff challenges the legitimacy of the basis for the PIP.

Plaintiff alleges that complying with the requirements of the PIP proved "impossible" for a host of reasons. *Id*. ¶ 32. For one thing, Plaintiff allegedly received the deadlines referenced in the PIP at the last minute. *Id.* Plaintiff also confronted a delay because of technical issues known by Defendant, which allegedly prevented Plaintiff from accessing the software necessary to complete his assignments for twenty hours and thereby further hindered his ability to meet the PIP deadlines. *Id.* ¶ 36.

Nevertheless, Plaintiff avers that he had completed other deadlines included in the PIP on time or within a day or two of a deadline established by Defendant. *Id.* The Complaint alleges that similar work performance by non-disabled employees did not result in placement on a PIP. *Id*. ¶ 37. Moreover, while Plaintiff finished his assignment four days late, he allegedly managed to finish his tasks before any of his fellow employees who, unlike Plaintiff, could delegate work to Plaintiff's newly hired colleague. *Id.*

Before the conclusion of his PIP, Defendant terminated Plaintiff on February 26, 2020. *Id.* ¶ 38. In the termination notice, Defendant maintained that Plaintiff did "not fulfill[] the

requirements of his PIP," and because of this, Defendant made the decision to "terminate [his] employment effective immediately." *Id.*

## B. Procedural Background

Plaintiff timely filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC"). Dkt. 1 ¶ 41. The EEOC issued and mailed Plaintiff a Notice of Right to Sue. *Id.* ¶ 42. Plaintiff subsequently filed this Complaint within ninety days of his receipt of the Notice on November 1, 2021. Dkt. 1. On January 12, 2022, Defendant filed a Motion to Dismiss for Failure to State a Claim (Dkt. 9) and a Memorandum in Support (Dkt. 10). Plaintiff filed a Memorandum in Opposition on January 26, 2022. Dkt. 13. Defendant filed a Reply on February 22, 2022. Dkt. 14.

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the sufficiency of a complaint. *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011). "[T]he reviewing court must determine whether the complaint alleges sufficient facts 'to raise a right to relief above the speculative level[,]'" and dismissal is appropriate only if the well-pleaded facts in the complaint "state a claim that is plausible on its face." *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 556).

At the motion-to-dismiss stage, a plaintiff need only "allege facts sufficient to state all the elements of [his] claim," *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), and "the district court must 'accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the plaintiff].'" *Dao v. Faustin*, 402 F. Supp. 3d 308, 315

6

(E.D. Va. 2019) (quoting *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015)).  Still, "[c]onclusory allegations regarding the legal effect of the facts alleged" need not be accepted.  *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995); *see also E. Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) ("[W]hile we must take the facts in the light most favorable to the plaintiff, we need not accept the legal conclusions drawn from the facts . . . Similarly, we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.").  And "[g]enerally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion."  *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (citing *Goldfarb*, 791 F.3d at 508).

### III. ANALYSIS

Defendant failed to file the Reply to the Plaintiff's Opposition by the deadline established by Rule 7(F)(1) of this Court's Local Civil Rules.  The Reply, therefore, will not be considered in the analysis of the Motion to Dismiss, but even if considered, the arguments raised in the Reply would not alter the Court's Opinion.

#### A. ADA Disability Discrimination Claim (Count I)

Plaintiff's first claim alleges Defendant unlawfully discriminated against him and terminated him because of his disability in violation of the ADA.  In response, Defendant seeks to dismiss the claim on two grounds: (1) Plaintiff does not meet the definition of a "qualified individual" to receive protection under the ADA, and (2) most of Plaintiff's alleged adverse actions predate Defendant's knowledge of Plaintiff's alleged disability.  Dkt. 10.

To state a claim under the ADA for unlawful discrimination, Plaintiff must allege facts sufficient to show that (1) he was a qualified individual with a disability; (2) he suffered an adverse employment action; (3) he was meeting his employer's legitimate expectations at the time of the

7

adverse employment action; and (4) the circumstances of the adverse employment action raise a reasonable inference of unlawful discrimination. *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012).

Plaintiff has sufficiently alleged he meets the definition of a "qualified individual," suffered an adverse employment action after the disclosure of his disability to Defendant, and pleaded a case of discrimination that survives the Motion to Dismiss.[1]

### 1. Whether Plaintiff is a Qualified Individual

Accepting the facts alleged by the Plaintiff as true as the Court must at this stage, *Ashcroft*, 662 U.S. at 678; *Twombly*, 550 U.S. at 555, Plaintiff meets the criteria of a qualified individual under the ADA because Plaintiff has the ability to perform the essential functions of the employment position "with or without reasonable accommodation." 42 U.S.C. § 12111(8). Defendant does not contest that Plaintiff has a disability but argues he "plead[ed] away the essential element that he was capable of performing the duties of his job with or without reasonable accommodation" by requesting a lighter workload as an accommodation. Dkt. 10 at 4.

Under the ADA, to meet the criteria of a "qualified individual" with a disability and receive the protection of the statute, a plaintiff must show he or she has a disability and is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Smith v. CSRA*, 12 F.4th 396, 412 (4th Cir. 2021) (quoting 42 U.S.C. § 12111(8)). To demonstrate a disability, a plaintiff must plead facts that demonstrate the disability substantially limits a major life activity under the expanded

---

[1] For a discrimination claim, "it has long been the rule that 'an employment discrimination plaintiff need not plead a prima facie case of discrimination' under the evidentiary framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to withstand a motion to dismiss." *Holloway v. Maryland*, 32 F.4th 293, 298-300 (4th Cir. 2022) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002)).

definition of disability codified in the ADA Amendments Act of 2008 (ADAAA). *Summers v. Altarum Inst., Inc.*, 740 F.3d 325, 329 (4th Cir. 2014) (citing 42 U.S.C. § 12102(4)(A) as part of the Court's traditional ADA analysis). The ADAAA lists "hearing, . . . concentrating, [and] thinking" as examples of major life activities. 42 U.S.C. § 12102(2)(A).

Plaintiff's allegations, at a minimum, plausibly suggest he has a disability that substantially limits major life activities because his alleged disease affects his ability to hear, concentrate for extended periods of time, and think when the symptoms of his disease become exacerbated. Dkt. 1 ¶ 25; *see also Summers*, 740 F.3d at 328-29 (substantial limitation of one of the major-life activities enumerated by 42 U.S.C. § 12102(2)(A) qualifies as a disability). Without question, if ultimately proven to be true before a fact-finder, the circumstances of this case are very troubling.

After showing a disability, the inquiry turns to whether Plaintiff could perform the essential functions of his employment. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 574 (4th Cir. 2015). By simply asking for an accommodation, Plaintiff does not plead away his ability to perform the essential functions of his employment as determined by the employer. *Adams v. Anne Arundel Cty. Pub. Schs.*, 789 F.3d 422, 430 (4th Cir. 2015) ("The ADA forbids an employer from discriminating against an individual with a disability who, with 'reasonable accommodation, can perform the essential functions' of the position." (quoting 42 U.S.C. § 12111(8))); *see also U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 393 (2002); *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001). Plaintiff suggested Defendant hire more staff in December of 2019 and requested accommodations in the form of "more frequent restroom breaks and a lighter workload" on January 23, 2020. Dkt. 1 ¶¶ 27, 28. Defendant did not grant either accommodation, and Plaintiff continued to work in the same manner as before he made these suggestions. *Id.* ¶¶ 27, 29. At no point do Plaintiff's allegations reveal his inability to perform the essential functions of his job.

9

Rather, Plaintiff pleaded that on two occasions, he received positive feedback from supervisors regarding the quality of his work, Dkt. 1 ¶ 9, and in February of 2020, he completed his assignments before anyone else on his team. *Id.* ¶ 36. At this stage, Plaintiff sufficiently alleges facts that support the notion he could perform the essential functions of his employment.

2. Whether Plaintiff Suffered an Adverse Employment Action

Plaintiff argues he suffered adverse employment actions including denial of disability benefits, harassment, hostility from supervisors, unreasonable deadlines, placement on a PIP, and termination. Dkt. 1 ¶¶ 15-19, 20-21, 32, 35, 38. Defendant argues the majority of alleged adverse actions predate Defendant's knowledge of Plaintiff's disability and thus cannot be attributed to Defendant as discriminating against Plaintiff for his alleged disability. Dkt. 10 at 2-3.

The Fourth Circuit defines an adverse employment action as one that significantly affects employment or conditions of the workplace. *Laird v. Fairfax Cty.*, 978 F.3d 887, 893 (4th Cir. 2020) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006)); *see also Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (defining adverse action in a Title VII claim). Termination, by eliminating employment, significantly affects a person's employment and qualifies as an adverse employment action. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011); *Holland*, 487 F.3d at 218; *see also E.E.O.C. v. Stowe-Pharr Mills Inc.*, 216 F.3d 373, 377 (4th Cir. 2000) (noting a plaintiff may show termination "or other adverse employment action" to support a discrimination claim).

For the purposes of the discrimination claim, the only adverse employment actions Plaintiff suffered are his placement on PIP leading to termination and the termination itself—both of which postdated Defendant's knowledge of Plaintiff's disability. Defendant's reliance on Plaintiff's failure to comply with the PIP as a basis for his termination demonstrates that the PIP is material

10

to the adverse event analysis to the extent it resulted in Plaintiff's termination. *Holloway*, 32 F.4th at 298-300; *see also Jensen-Graf v. Chesapeake Emp'rs' Ins. Co.*, 616 F. App'x 596, 598 (4th Cir. 2015) ("[A] poor performance evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment." (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir. 2004))). Because Defendant terminated Plaintiff's employment and used the placement on a PIP as the basis for "detrimentally alter[ing] the terms" of Plaintiff's employment, Plaintiff's termination and placement on PIP qualify as the only adverse employment actions alleged by Plaintiff in the complaint. *Jensen-Graf*, 616 F. App'x at 598. At the motion-to-dismiss stage, Plaintiff sufficiently alleges facts that plausibly suggest Plaintiff suffered an adverse employment action.

### 3. Whether Plaintiff was Meeting Employer's Legitimate Expectations

Plaintiff alleges he met the legitimate expectations of his employer throughout his employment. For example, he alleges he received positive feedback on his work performance twice in the fall of 2019 and completed all his assigned tasks in February of 2020 before any other member of his team despite his inability to access vital accounting software for twenty hours. Dkt. 1 ¶¶ 9, 36. Plaintiff also alleges the timing of the completion of his work was consistent with similarly situated, non-disabled employees whose employment was not terminated. *Id.* ¶ 32. Defendant fails to argue Plaintiff did not meet legitimate expectations during his employment. Nor does Defendant argue that Plaintiff did not meet Defendant's employment expectations. Dkt. 10. Plaintiff, therefore, satisfies the third element of his discrimination claim.

4. Whether a Reasonable Inference of Unlawful Discrimination Exists

Plaintiff avers that his disability directly led to his placement on PIP and his subsequent termination. Defendant fails to argue in its Motion to Dismiss that an inference of unlawful discrimination would be unreasonable in this case.

Close temporal proximity between disability disclosure and the adverse action draws a reasonable inference of discrimination. *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 706 (4th Cir. 2001); *Flynn v. Mid-Atl. Mar. Acad.*, No. 2:18-cv-502, 2019 WL 7859409 at *8 (E.D. Va. July 30, 2019); *Williamson v. Bon Secours Richmond Health Sys., Inc*, 34 F. Supp. 3d 607, 615 (E.D. Va. 2014). In making this determination, the Court focuses exclusively on the PIP and directly related termination, not the events preceding Plaintiff's placement on the PIP. Plaintiff's disclosure of his disability allegedly occurred in early January of 2020, his request for accommodations on or about January 23, 2020, the denial of these accommodations on or about January 29, 2020, his placement on PIP on February 4, 2020, and his termination on February 26, 2020. Dkt. 1 ¶¶ 28-29, 32, 38. This close-knit series of events supports a reasonable inference of discrimination. Each of these disclosure events occurred days or weeks apart, which courts sitting in the Fourth Circuit have considered sufficiently close in time to infer discrimination. *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (ten weeks does not automatically preclude an inference of discrimination); *Bordonaro v. Johnston Cty. Bd. of Educ.*, 938 F. Supp. 2d 573, 580 (E.D.N.C. 2013) (holding that termination within weeks of requesting accommodation raises a reasonable inference of discrimination); *but see Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 127 (4th Cir. 2021) (three months between the protected activity and adverse action does not support causation).

Although Plaintiff disclosed his disability two months before his termination, the short time between the request for accommodations, supervisor's response to request, denial of accommodations, and placement on a PIP leading to Plaintiff's termination make an inference of discrimination reasonable, satisfying the fourth element of the discrimination claim. *See Tutt v. Wormuth*, No. 1:19-cv-00588, 2021 WL 4076729, at *2 (4th Cir. Sep. 8, 2021) (finding supervisor's suggestive comments as supporting causation when two events occurred sixteen months apart); *E.E.O.C. v. Town & Country Toyota, Inc.*, 7 F. App'x 226, 231-32 (4th Cir. 2001) (stating a plaintiff simply must provide sufficient evidence to support an inference of discrimination but does not have to carry its burden on the ultimate issue of discrimination).

Plaintiff has pleaded a facially plausible case of discrimination, and the Court will allow Count I to proceed.

### B. ADA Failure-to-Accommodate Claim (Count II)

Plaintiff's second claim alleges Defendant's denial of his request for accommodations amounts to a failure to accommodate in violation of the ADA. Defendant argues Plaintiff fails to make a *prima facie* case because the requested accommodations are not reasonable and reasserts the previous argument that Plaintiff does not meet the criteria of a "qualified individual" under the statute. Dkt. 10 at 5.

To state a claim under the ADA for a failure to accommodate, a plaintiff must allege "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position [sought or held]; and (4) that the [employer] refused to make such accommodations." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (citing *Rhoads*, 257 F.3d at 387 n.11).

13

As previously established, Plaintiff meets the criteria of a "qualified individual" under the statute and could perform the essential functions of his position, satisfying the first element of a *prima facie* case. Defendant had knowledge of Plaintiff's disability upon Plaintiff's notice in early January of 2020, satisfying the second element. Dkt. 1 ¶ 28. Plaintiff also satisfies the fourth element as Defendant refused to make Plaintiff's requested accommodations. *Id.* ¶ 29. The only dispute between the parties regarding Plaintiff's clam is the reasonableness of Plaintiff's requested accommodations in satisfaction of the third element.

The text of the pertinent statute, 42 U.S.C. § 12111(9)(B), lists "job restructuring [and] part-time or modified work schedules" as reasonable accommodations. Defendant cites several cases outside of the Fourth Circuit[2] and one within the Fourth Circuit[3] to argue that a reduction in workload is not necessarily reasonable, and an employer does not need to grant such an accommodation. Plaintiff's accommodations of "more frequent restroom breaks and a lighter workload" are not unreasonable as a matter of law when Defendant hired an additional employee and encouraged Plaintiff's colleagues to delegate work to the newly hired employee. *See Fink v.*

---

[2] *See, e.g.*, *Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1125 (10th Cir. 1995); *Hunt-Watts v. Nassau Health Care Corp.*, 43 F. Supp. 3d 119, 134 (E.D.N.Y. 2014); *Desmond v. Yale-New Haven Hosp., Inc.*, 738 F. Supp. 2d 331, 348 (D. Conn. 2010) (quoting 29 C.F.R. pt. 1630, app. § 1630.2(o), and *Shannon v. N.Y. City Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003)). But these cases do not adequately fit the facts of this case. They (1) fail to address the request for more frequent restroom breaks and (2) do not account for the fact that Defendant hired an employee who functionally decreased the workload of every member of Plaintiff's team except for Plaintiff.

[3] Defendant cites in its Reply one case within the Fourth Circuit, *Carter v. Tisch*, 822 F.2d 465, 467 (4th Cir. 1987), that holds an employer is not required by the ADA to assign an employee to "permanent light duty." While the Fourth Circuit has adopted this view, the present case differs from *Carter* and its progeny because Defendant already hired a new staff member who Defendant encouraged other members of the team to delegate work to, effectively decreasing their workload. Plaintiff also requested more frequent restroom breaks as an additional accommodation, which was also denied and not discussed. Even if Plaintiff's requests for a lighter workload were construed as "permanent light duty," Defendant's argument fails to address Plaintiff's other accommodation request.

*Richmond*, 405 F. App'x 719, 721 (4th Cir. 2010) (finding an employer's accommodation to allow an employee increased access to the bathroom was reasonable); *Ainsworth v. Loudon Cty. Sch. Bd.*, 851 F. Supp. 2d 963, 979 (E.D. Va. 2012) (noting a modified schedule may be a reasonable accommodation).

To be sure, just because an accommodation is reasonable does not mean an employer must grant the accommodation as requested by the employee. *Hannah P. v. Coats*, 916 F.3d 327, 338 (4th Cir. 2019); *Adams*, 789 F.3d at 433; *Reyazuddin v. Montgomery Cty.*, 789 F.3d 407, 415 (4th Cir. 2015). But in this case, because Defendant denied Plaintiff's accommodation and did not engage in an interactive process to find a reasonable accommodation, Plaintiff has pleaded a facially plausible accommodation claim. *See Jacobs*, 780 F.3d at 581-82 (finding a reasonable jury could conclude an employer acted in bad faith and failed to accommodate the employee by terminating her before engaging in the interactive process to find an accommodation). The Court will not dismiss Count II.

## C. ADA Retaliation Claim (Count III)

Plaintiff's third claim alleges Defendant retaliated against Plaintiff for disclosing his disability and requesting accommodations. Defendant again argues that most of the alleged retaliatory actions occurred before the disclosure of the disability, precluding a retaliation claim.

To state a claim under the ADA for retaliation, a plaintiff must establish (1) that he engaged in protected activity; (2) that an adverse employment action was taken against him; and (3) that there was a causal link between the protected activity and the adverse employment action. *Foster v. Univ. of Md., E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015). As previously noted in Count I, Plaintiff does not need to engage in the familiar *McDonnell Douglas* framework to withstand a motion to dismiss. *Holloway*, 32 F.4th at 298-300 (citing *Swierkiewicz,* 534 U.S. at 515).

Plaintiff's complaint need only meet the plausibility standard set forth in *Ashcroft* and *Twombly* to survive the present Motion. *Id.* Plaintiff meets his burden to survive dismissal.

First, Plaintiff engaged in protected conduct when requesting an accommodation and questioning the denial of his accommodation. *Thomas v. City of Annapolis, Md.*, 851 F. App'x 341, 350 (4th Cir. 2021) (holding requesting an accommodation is protected conduct); *Jacobs*, 780 F.3d at 577; *Lamb v. Qualex, Inc.*, 33 F. App'x 49, 60 (4th Cir. 2002).

Second, Plaintiff experienced an adverse employment action when Defendant placed him on a PIP and used that PIP as grounds for terminating his employment. *Holloway*, 32 F.4th at 298-300; *see also Jensen-Graf*, 616 F. App'x at 598.

Third, Plaintiff alleges adequate facts to show a causal connection at the motion-to-dismiss stage. At this stage, alleging facts sufficient to show a plausible causal connection is not an onerous burden. *Roberts*, 998 F.3d at 127 (citing *Burgess v. Bowen*, 466 F. App'x 272, 283 (4th Cir. 2012)); *Strothers v. City of Laurel*, 895 F.3d 317, 335 (4th Cir. 2018). A plaintiff may use temporal proximity and other evidence of retaliatory animus to establish a causal connection between the protected activity and adverse employment action. *Tutt*, 2021 WL 4076729, at *2 ; *see also Roberts*, 998 F.3d at 123 (citing *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 783-84 (4th Cir. 2021)); *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001). One month between the protected activity and the adverse employment action is sufficiently close to show causation through temporal proximity. *See Thomas*, 851 F. App'x at 350 (twenty-day gap sufficiently established causation) (citing *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994)); *Haulbrook.*, 252 F.3d at 706 (requesting accommodations in early November and termination at the end of November was sufficiently close in time to raise an inference of discrimination).

The temporal proximity between Plaintiff's requested accommodations and termination sufficiently show causation at the motion-to-dismiss stage. Plaintiff requested accommodations on January 23, 2020. Dkt. 1 ¶ 29. Defendant denied Plaintiff's request on January 29, 2020, and Plaintiff's supervisor informed him that his request "made her upset." *Id.* Defendant's placement of Plaintiff on a PIP on February 6, 2020, *Id.* ¶ 32, and termination of Plaintiff on February 24, 2020, *Id.* ¶ 38, occurred within almost a month of Plaintiff's request for accommodations. The Fourth Circuit has considered that timeframe sufficiently close to establish a causal connection between Plaintiff's protected activity and termination. *Thomas*, 851 F. App'x at 350 (citing *Carter*, 33 F.3d at 460); *Haulbrook*, 252 F.3d at 706. Additionally, Plaintiff's supervisor's response that Plaintiff's accommodations "made her upset," Dkt. 1 ¶ 29, provides a plausible basis to infer a retaliatory intent at the motion-to-dismiss stage. *See Tutt*, 2021 WL 4076729, at *2 (viewing comments by a supervisor as sufficient to "bridge the gap" between the protected activity and the retaliatory action and thereby establish causation at the motion-to-dismiss stage); *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) ("In cases where temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus.").

Because of the temporal proximity and Defendant's comments after the requested accommodations, Plaintiff satisfies his burden at the motion-to-dismiss stage to prove the third element of a retaliation claim in violation of the ADA. The Court will not dismiss Count III.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion (Dkt. 9) is DENIED as to all counts.

It is SO ORDERED.

Alexandria, Virginia
July 25, 2022

/s/
Rossie D. Alston, Jr.
United States District Judge